UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAIJIA SCOTT,<br><br>                Petitioner,<br><br>vs.<br><br>SUPERINTENDENT ADA PEREZ,<br><br>                Respondent. | No. 9:06-cv-01373-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Maijia Scott, a state prisoner appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently in the custody of the New York State Department of Correctional Services incarcerated at the Bedford Hills Correctional Facility.

I.  BACKGROUND/PRIOR PROCEEDINGS

      Scott was convicted, upon a guilty plea, in the Supreme Court of the State of New York, Schenectady County, to Murder in the Second Degree (New York Pen. Law § 125.25(1), Hindering Prosecution in the First Degree (N.Y. Pen. Law § 205.65), and four counts of Tampering with Physical Evidence (N.Y. Pen. Law § 215.40(2)). On January 10, 2000, the court sentenced Scott to 20 years to life imprisonment on the second-degree murder charge, to be served concurrently with two and one-third to seven years imprisonment on the first-degree hindering prosecution charge, and one and one-third to four years imprisonment on the four counts of evidence tampering.

      Scott appealed her conviction to the Appellate Division, Third Department, which affirmed her conviction and sentence on February 24, 2005, and the New York Court of Appeals denied leave to appeal on December 5, 2005. *People v. Scott*, 790 N.Y.S.2d 286 (N.Y.A.D.), *lv. denied*, 843 N.E.2d 1166 (N.Y. 2005) (Table). Scott timely filed her petition in this Court on November 7, 2006.

## II.  STANDARD OF REVIEW

Because Scott filed her petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000), which in this case was that of the Appellate Division affirming Scott's conviction.  In addition, the state court's findings of fact are presumed to be correct unless Scott rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Where there is no reasoned decision of the state court addressing the ground or grounds raised by Scott on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.  *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006).

To the extent that Scott alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief.  This Court may only address violations of federal law.  28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  It is also presumed that the state court knew and correctly applied state law.  *See Walton v. Arizona,* 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error

had a substantial and injurious effect or influence in determining the jury's verdict. *Fry v. Piler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

### III.  GROUNDS RAISED/DEFENSES

In her petition Scott raises seven grounds: (1) "defense counsel failed to protect [her] rights when [she] was coerced [into waiving her right to] a suppression hearing"; (2) that defense counsel did not "effectively represent [her] during sentencing"; (3) her plea was not knowingly, willingly, and intelligently made because she pled guilty because she was instructed to do so by her defense counsel, she did not understand the charges or her sentence, and the prosecutor threatened her with a sentence of 64 years to life sentence; (4) she "plead[ed] guilty to unindicted crimes" concerning "the attempted murder of Katrina Walton"; (5) defense counsel was ineffective because he failed to notify petitioner of her right to appeal; (6) her guilty plea allocution did not make out the elements of intentional murder; and (7) the indictment contained "multiplicitous and duplicitous" counts.

Respondent contends that four of Scott's claims are unexhausted and procedurally barred:  The first, second, and fifth because they were not properly raised in her application for leave to appeal to the New York Court of Appeals and the seventh because it was not raised in constitutional terms before either the Appellate Division or in her application for leave to appeal to the New York Court of Appeals.

### IV.  DISCUSSION

A.  **Guilty Plea**.

Three grounds relate to Scott's guilty plea: (1) whether it was freely and voluntarily given; (2) she pleaded guilty to a crime for which she was not indicted; and (3) her plea allocution failed to make out the elements of an intentional murder.  Relevant excerpts from the transcript of the plea colloquy are attached hereto as Appendix A.

<u>Voluntariness</u>.

The Appellate Division, in affirming Scott's conviction held, without explanation, "that defendant entered a knowing, voluntary and intelligent plea of guilty and waiver of her right to appeal." [790 N.Y.S.2d at 287]  Since, the Appellate Division did not provide reasons for its

holding, this Court reviews the record *de novo* to determine whether the finding by the Appellate Division is adequately supported by the record.

"For the plea to be voluntary, [i]t is axiomatic that the defendant must at least be competent to proceed. In addition, he must have an awareness of the true nature of the charge against him, * * *; have a rational as well as factual understanding of the proceedings against him, * * * and have knowledge of the nature of the constitutional protections he will forego by entering his plea." *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (internal quotation marks and citations omitted).

Scott faces a high hurdle in seeking to overturn a guilty plea on collateral review. As the Supreme Court held in *Mabry v. Johnson*, 467 U.S. 504, 508–09 (1984):

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange. It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:
>
> " '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' "

In *Iowa v. Tovar*, 541 U.S. 77, 92 (2004), the Supreme Court explained:

> This Court recently explained, in reversing a lower court determination that a guilty plea was not voluntary: "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original). We similarly observed in *Patterson:* "If [the defendant] ... lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that

the information it provided to him satisfied the constitutional minimum." 487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).

Here the Appellate Division found, and the record supports, that at the plea colloquy Scott entered her guilty plea knowingly, voluntarily, and intelligently, and specifically stated that she was advised of and understood the consequences of waiving the right to appeal. It is clear from the record that Scott was competent to proceed, had an awareness of the nature of the charge against her, had a rational as well as factual understanding of the proceedings against her, and was advised of the nature of the constitutional protections she forewent by entering her plea. There is no evidence in the record that Scott was coerced, threatened or misled into entering her guilty plea, and Scott has not produced any such evidence. The coercion alleged by Scott is that the prosecutor threatened her with a 64-year sentence if she did not accept the plea bargain. Assuming that the prosecutor in this case did, in fact, inform Scott through counsel that if convicted under the indictment she faced a 64-year prison term,[1] it hardly constitutes coercion. Any plea bargain is based upon the sentence offered by the prosecution as compared to the potential sentence if convicted of the crimes of which a defendant is charged. Here, the plea bargain, which encompassed fewer than all the charges, was more favorable than the potential sentence faced if convicted.[2] As the Supreme Court stated in *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977), citing *Machibroda v. United States*, 368 U.S. 487, 495–96 (1962):

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Scott is not entitled to relief on her third ground.

---

[1] There is no evidence of this in the record before this Court and is not alleged, and unlikely, that the prosecutor had any contact with Scott outside the presence of her counsel.

[2] In the plea colloquy the court specifically informed Scott that (1) she faced a sentence of 25 years to life on the murder charge and (2) that if consecutive sentences were imposed on the other counts to which she was pleading, she could be sentenced to considerably more than 25 years to life. Scott indicated she understood this and that she had a full opportunity to discuss it with her counsel. Appendix A, p. 4.

Plea to an Unindicted Crime.

As Respondent correctly argues, the transcript of the plea colloquy does not show that Scott entered a guilty plea to any crime other than those in the indictment to which she specifically entered a plea. Scott is not entitled to relief on her fourth ground.

Allocution Inadequate to Establish Intentional Murder.

Scott claims that the plea allocution does not establish intentional murder, *i.e*., that she had no subjective intent to kill the victim. First, there is no federal constitutional requirement that a defendant in a state court criminal prosecution must admit the factual basis for a guilty plea. *See Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984).

Second, the transcript of the plea hearing directly contradicts Scott's *post hoc* claim of lack of a subjective intent to cause the death of the victim. Scott stated under oath that, although she herself did not commit the acts that resulted in the victim's death, she actively participated in them with the intent that what was being done would cause the death of the victim, including handing one of the co-defendants a knife with which the victim was stabbed. Appendix A, p. 5.

Consequently, Scott is not entitled to relief on her sixth ground.

B. **Ineffective Assistance of Counsel**.

Three grounds relate to Scott's ineffective assistance of counsel claim: (1) counsel failed to protect her when she was coerced into waiving her right to a suppression hearing; (2) failed to effectively represent her at sentencing; and (3) failed to advise her of her right to appeal. The Appellate Division did not address the ineffective assistance of counsel issue. Accordingly, the Court reviews the record *de novo* and makes an independent determination on the merits.

To demonstrate ineffective assistance of counsel, Scott must show both that her counsel's performance was deficient and that the deficient performance prejudiced her defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Scott must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). *Strickland* and its progeny do not mandate this court act as a "Monday

morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Suppression Hearing.

Scott alleges that defense counsel allowed her to be coerced into waiving her rights to a *Huntley* suppression hearing.[3] Relevant excerpts from the transcript of the proceedings at the *Huntley* hearing are attached hereto as Appendix B. Review of that transcript does not reveal any coercion was employed. Quite to the contrary, the transcript unequivocally establishes that Scott freely and voluntarily waived the *Huntley* hearing in exchange for the prosecution's agreement to keep the plea offer, which she subsequently accepted, open for a period of two weeks. Scott offers no evidence, other than her conclusory allegation, to support her claim.

The formidable barrier that Scott fails to pierce is that solemn declarations made in open court carry a strong presumption of verity. Subsequent conclusory allegations unsupported by specifics, as well as contentions that are on the face of the record incredible, are subject to summary dismissal. *Blackledge v. Allison, supra*; *United States v. Hernandez*, 242 F.3d 110, 112–113 (2d Cir. 2001). Scott is not entitled to relief on her first ground.[4]

---

[3] A hearing pursuant to *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965), to determine the admissibility of statements made by a criminal defendant.

[4] Respondent contends that Scott has not exhausted her state court remedies as to this ground.
(continued...)

Representation During Sentencing.

Relevant excerpts from the transcript of the proceedings at sentencing are attached hereto as Appendix C. Scott's argument on this ground is unclear. Scott does not point to any specific deficiency with respect to counsel's representation at her sentencing and review by this Court does not reveal any obvious deficiency. Counsel appears to have argued the only apparent mitigating circumstances: the death of Scott's mother at an early age, her lack of a criminal record, and her youth and immaturity. Indeed, Scott received the very sentence for which she bargained in entering her guilty plea. Scott is not entitled to relief on her second ground.[5]

Failure to Advise of Right to Appeal.

Assuming that counsel did not advise her of her right to appeal, Scott has suffered no prejudice as a result, thus failing the second prong of the *Strickland-Hill* test. The record reflects that Scott did, in fact, file a notice of appeal, the Appellate Division appointed counsel, and decided the appeal. Scott alleges that the appeal was untimely because of counsel's failure to advise her of the right to appeal. Even if untimely, the Appellate Division did not decide the appeal on that basis, instead it addressed the merits of the voluntariness of her guilty plea and the waiver of appeal. Scott is not entitled to relief on her fifth ground.[6]

C. **Indictment**.

The alleged errors in the indictment occurred prior to the entry of Scott's guilty plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the

---

[4](...continued)
The Court need not reach that issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

[5] Respondent contends that Scott has not exhausted her state court remedies as to this ground. The Court need not reach that issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

[6] Respondent contends that Scott has not exhausted her state court remedies as to this ground. The Court need not reach that issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart*, 474 U.S. at 56–57, quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

As noted above, Scott's plea was entered voluntarily, and Scott has failed to show that the representation of counsel in making the decision to enter a plea of guilty was ineffective. Scott is not entitled to relief on her seventh ground.[7]

## V.  CONCLUSION AND ORDER

Petitioner is not entitled to relief on any of the grounds raised in her petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).  To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, in its decision on appeal, no reasonable jurist could find that the decision was "objectively unreasonable." Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated: July 22, 2008.

s/ James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
United States District Judge

---

[7] Respondent contends that Scott has not exhausted her state court remedies as to this ground. The Court need not reach that issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).